# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**ANGUS WRIGHT,**
        **Plaintiff,**

    v.                                               Case No. 13-C-1028

**CITY OF MILWAUKEE, et al.,**
        **Defendants.**

## DECISION AND ORDER

Angus Wright claims that Milwaukee Police Officer Zachary Thoms subjected him to an unreasonable search and seizure, in violation of the Fourth Amendment to the United States Constitution. He has brought a civil suit for damages against Thoms pursuant to 42 U.S.C. § 1983. He also alleges claims against Michael Vagnini, a fellow police officer who was present during the search. Wright alleges claims for supervisory liability against Thoms's sergeant, Jason Mucha, his captain, Edith Hudson, and the Chief of Police, Edward Flynn. Finally, Wright alleges that a municipal policy was the moving force behind the seizure and that therefore the City of Milwaukee is liability for damages under Monell v. Department of Social Services, 436 U.S. 658, 690 (1978).

Before me now is the defendants' motion for summary judgment on all claims.[1] I must grant the motion if the defendants show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When considering a motion for summary judgment, I take the evidence in the light most favorable to the non-moving party and may grant the motion only if no reasonable

---

[1] Also before me is plaintiff's motion for leave to file a first amended complaint.

juror could find for that party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 255 (1986).

## I.  BACKGROUND

On December 21, 2011, at approximately 11:00 p.m., Thoms and Vagnini were on patrol in a squad car in the City's fifth police district, in an area that, according to the officers, was known for gun-involved drug dealing and other types of criminal activity. Thoms observed a black vehicle driving on the street with extremely dark tinted windows. Thoms thought that the tinting was darker than allowed by City ordinance, and for this reason he and Vagnini decided to pull the vehicle over. After doing so, the officers exited their squad car and approached the vehicle. Thoms approached the passenger side, and Vagnini approached the driver's side.

The plaintiff, Angus Wright, an African American male who at the time was seventeen years old, was in the front passenger seat of the vehicle. Before the officers pulled the vehicle over, Wright had been holding in his hands a baggie that contained crack cocaine. As Thoms approached Wright's side of the vehicle, he illuminated the interior with his flashlight. Thoms states that at this point he observed Wright making "exaggerated and unnecessary movements in his seat." Def. Prop. Findings of Fact ("PFOF") ¶ 21. According to Wright, he only "lifted himself up slightly." Pl. PFOF ¶ 3. But Wright admits that, at this point, he "reached into his underwear and inserted a small bag of cocaine into his anus so that about half of the baggie was concealed inside his anus and the other half was between his butt cheeks." Id.

2

When Thoms arrived at Wright's side of the car, Wright rolled down the window. According to Thoms, Wright appeared to be very nervous and stuttered when he responded to questions. Thoms states that because of Wright's nervousness, the movements he made as Thoms approached the window, and the fact that the traffic stop occurred in a high-crime area, he suspected Wright might be armed and ordered him to exit the vehicle. Thoms then conducted a patdown search of Wright. Def. PFOF ¶ 33. Thoms states that he performed the patdown with a "bladed hand" over Wright's clothing, in the areas of his waistband, legs, armpit, arms, chest, groin, and buttocks, for the purpose of ensuring that he was not carrying any type of weapon. Def. PFOF ¶ 33; Thoms Dep. 231. Wright was wearing boxer shorts and large, loose-fitting pants. Thoms states that while he was conducting the patdown, he felt an "abnormal protrusion" in Wright's "buttocks area," which Thoms identified as a package of illegal narcotics. Def. PFOF ¶ 37. He also states that the patdown caused the item to become "somewhat dislodged" from its original location. Id. ¶ 39. According to Thoms, he then grabbed the suspected narcotics outside of Wright's clothes and pulled it away from Wright's body. The defendants contend that, up to this point, Officer Vagnini was engaged with the driver on the other side of the vehicle. When Thoms discovered the item in Wright's buttocks area, he asked Vagnini for assistance. Vagnini, who observed that Thoms was holding the outside of Wright's clothing, to the rear and below the waistline, provided Thoms with a plastic glove. Thoms claims that he then "manipulated the suspected narcotic to the top of Mr. Wright's underwear until it was exposed at the top of his pants." Def. PFOF ¶ 45. Thoms confirmed that the package contained crack cocaine and arrested Wright. Thoms contends that, in recovering the crack cocaine, he never put his hands inside Wright's

3

pants or underwear. He also contends that during the search he did not view or expose Wright's buttocks, anus, or genital area.

Wright contends that the facts leading up to the discovery of the crack cocaine were different. Wright states that while he was still in the passenger seat of the car, Thoms asked him "why do you look so nervous?" and then immediately opened the car door, grabbed Wright by the arm, and pulled him out of the car. Pl. PFOF ¶ 5. Thoms forced Wright's hands onto the roof of the car and patted him down. Thoms did not perform a patdown search of Wright's buttocks area. Id. ¶ 7; see also Pl. Resp. to Def. PFOF ¶¶ 33, 37; Wright Dep. at 73, 76. Instead, he asked Vagnini, who by this time was standing next to Thoms, to bring him a glove. Pl. PFOF ¶ 9. Vagnini retrieved a blue plastic glove from the trunk of the police car and brought it to Thoms, who was still standing behind Wright at the passenger side of the car. Id. ¶ 10. Thoms put the glove on his own hand and spread Wright's legs apart. Id. ¶ 11. With Vagnini standing next to him, Thoms inserted two fingers of his gloved hand inside Wight's pants but outside his underwear and removed the package of cocaine from Wright's butt cheeks.[2] Wright Dep. at 85–86. Thoms then reached in with his other hand and removed the package from Wright's underwear. Id. at 86–88. Thoms handed the bag to Vagnini. The officers arrested Wright and brought him to the police station. Wright was charged with possession of cocaine.

## II. DISCUSSION

### A. Claim Against Thoms for Unreasonable Search and Seizure

---

[2]Wright's lawyers, in their proposed findings of fact, contend that Thoms inserted two fingers into Wright's anus while removing the bag. See Pl. PFOF ¶ 14. However, the evidence they cite, Wright's deposition testimony at pages 85–89, does not support this fact. Wright did not say that Thoms inserted his fingers into Wright's anus.

4

Wright claims that Thoms subjected him to an unreasonable search and seizure. Wright does not challenge the legality of the traffic stop or dispute that Thoms had reasonable suspicion to conduct a patdown search for weapons. However, Wright contends that Thoms exceeded the scope of a permissible patdown search when he reached into Wright's pants and removed the baggie of cocaine. Thoms contends that the search was permissible and that, even if it was not, he is entitled to qualified immunity.[3]

Under Terry v. Ohio, an officer who is justified in believing that a person whose suspicious activity he is investigating is armed and dangerous may conduct a patdown search "to determine whether the person is in fact carrying a weapon." 392 U.S. 1, 24 (1968). A patdown search must be limited to a search for weapons; its purpose is not to discover evidence of a crime. Minnesota v. Dickerson, 508 U.S. 366, 373 (1993). However, if during the course of a patdown search that is properly limited in scope the officer feels an object that he immediately identifies as contraband, the officer may seize that object without first obtaining a warrant. Id. at 373, 375–76. This is what is sometimes known as the "plain feel" or "plain touch" exception to the warrant requirement. See id. at 371 n.1.

---

[3] An official sued under § 1983 is entitled to qualified immunity unless it is shown that the official violated a statutory or constitutional right that was " 'clearly established' " at the time of the challenged conduct. Ashcroft v. al–Kidd, 563 U.S. __, 131 S.Ct. 2074, 2080 (2011). A defendant cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it. Id. at 2083–84. In other words, "existing precedent must have placed the statutory or constitutional question" confronted by the official "beyond debate." Id. In addition, the Supreme Court has repeatedly emphasized that clearly established law must not be defined at a high level of generality, id., at 2074, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced. Plumhoff v. Rickard, __ U.S. __, 134 S. Ct. 2012, 2023 (2014).

Under Officer Thoms's version of the facts, the search of the plaintiff was reasonable. As noted, the plaintiff concedes that the initial stop of the vehicle was permissible and that Thoms was justified in conducting a patdown search for weapons. According to Thoms, while he was running his hands over Wright's outer clothing, he found an abnormal protrusion in Wright's buttocks area, which based on his training and experience he knew was a package of illegal narcotics. Having found the package of narcotics through plain feel, Thoms was justified in reaching into plaintiff's pants and retrieving it. See United States v. Thomas, 512 F.3d 383, 386–89 (7th Cir. 2008) (holding that narcotics were lawfully seized when, during a patdown search of the suspect's outer clothing, an officer felt a bulge between the suspect's buttocks and then inserted his hand inside the suspect's pants and his underwear and retrieved a golf-ball-sized ball of crack cocaine and heroin from between the suspect's buttocks).

However, under the plaintiff's version of the facts, which I must accept as true for purposes of the motion for summary judgment, Officer Thoms did not discover the crack cocaine through plain feel during the course of a lawful patdown search for weapons. According to the plaintiff, Thoms never performed a patdown search of the plaintiff's buttocks area over his clothing and thus could not have discovered the narcotics through plain feel. Under the plaintiff's version of the facts, Thoms simply decided to conduct a reach-in search of the plaintiff's pants. Such a reach-in search would clearly be outside the scope of a permissible patdown search for weapons, as patdown searches must be conducted over a suspect's clothing. See Sibron v. New York, 392 U.S. 40, 65 (1968) (officer may not reach into suspect's pocket in search of narcotics without first conducting patdown of outer clothing to locate weapons). For these reasons, I conclude that plaintiff's

6

claim against Thoms presents a triable issue of fact. Moreover, because it is clearly established that an officer may not reach inside a suspect's clothing during a patdown search without first identifying weapons or contraband through plain feel, see, e.g., id., Thoms is not entitled to qualified immunity. Accordingly, the defendants' motion for summary judgment on plaintiff's claim against Thoms must be denied.

**B.     Claims for Failure to Intervene and Conspiracy Against Vagnini**

The plaintiff alleges that Vagnini is liable under § 1983 for Thoms's unlawful search both because he failed to intervene to prevent Thoms from conducting the illegal search and seizure and because he conspired with Thoms to perform an illegal search and seizure.[4]

An officer who is present and fails to intervene to prevent other law enforcement officers from infringing the constitutional rights of citizens is liable under § 1983 if that officer had reason to know that any constitutional violation has been committed by a law enforcement official and the officer had a realistic opportunity to intervene to prevent the harm from occurring. Yang v. Hardin, 37 F.3d 282, 285 (7th Cir. 1994).

To prove that Vagnini failed to intervene to prevent a constitutional violation, the plaintiff must show that Vagnini witnessed the initial patdown search and saw that Thoms did not conduct a patdown of the plaintiff's buttocks area over his outer clothing. This so because, as explained, Thoms's reaching into plaintiff's pants to retrieve the crack cocaine would not have been unconstitutional if Thoms had first discovered the drugs through plain feel during the course of a lawful patdown. However, the plaintiff has pointed to no

---

[4]The plaintiff has filed a motion to amend his complaint to formally add the conspiracy allegations. See Fed. R. Civ. P. 15. I will grant that motion.

7

evidence in the record from which a reasonable trier of fact could conclude that Vagnini witnessed the patdown search. Under plaintiff's version of the facts, Vagnini was initially engaged with the driver of the vehicle on the other side of the car while Thoms was engaged with the plaintiff. At some point, Vagnini came around the car to assist Thoms, but plaintiff states that this did not happen until after Thoms had performed the patdown. Wright Dep. at 73. Thus, on this record, a reasonable jury could not conclude that Vagnini was aware that the search he helped Thoms conduct violated the Fourth Amendment, and summary judgment will be granted on the failure-to-intervene claim against Vagnini.

The plaintiff's proposed conspiracy claim is based on largely the same facts as the failure-to-intervene claim and fails for the same reason, namely, there is no evidence in the record from which a reasonable jury could conclude that Vagnini knew the search Thoms was about to perform and did perform was not justified by the plain-feel doctrine.

**C.    Municipal and Supervisory Liability**

Under Monell v. Department of Social Services, 436 U.S. 658, 690 (1978), municipalities and other local governmental units are "among those persons to whom § 1983 applies." Monell, however, places a substantial limitation on this liability. A municipality "cannot be held liable solely because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory." Id. at 691. Rather, municipal governments may be sued only when their officers inflict an injury in the execution of the government's policy or custom, "whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy." Id. at 694. To show that a municipal policy was the cause of the plaintiff's constitutional

injury, the plaintiff must demonstrate that the policy was the "moving force" behind the violation. Id.

Supervisors may be personally liable under § 1983 for the unconstitutional acts of their subordinates if they approve of the conduct and the basis for it. Beckes v. Vill. of Peoria Heights, 662 F.3d 866, 870 (7th Cir. 2011). To be liable, supervisors must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see. They must in other words act either knowingly or with deliberate, reckless indifference. Id.

In the present case, the plaintiff's municipal and supervisory liability claims are premised on the existence of a de facto policy in the Milwaukee Police Department of allowing "illegal strip and body cavity searches." Pl. Br. in Opp. at 35. However, to the extent that Officer Thoms's search of the plaintiff in this case was unconstitutional, it was unconstitutional because Thoms reached into plaintiff's clothing without first identifying the drugs through a patdown search, not because it was an illegal strip or body-cavity search. I do not understand the plaintiff to be alleging that the Milwaukee Police Department or supervisors such as Mucha, Hudson, and Flynn maintained or condoned a policy of reaching into a suspect's pockets or clothing during a patdown search without first identifying weapons or contraband through a search conducted over the suspect's clothing.[5] Rather, the alleged policy seems to involve officers strip-searching suspects in public or probing their body cavities. If such a policy existed, it would not have been the

---

[5]In any event, the evidence in the record would not allow a reasonable jury to conclude that a policy of performing reach-in searches without first conducting a patdown search of the outer clothing existed.

9

moving force behind the constitutional violation in this case, as under no reasonable view of the facts did Thoms probe plaintiff's body cavity or cause the plaintiff to disrobe in public. Accordingly, I will grant the defendants' motion for summary judgment as to all claims for municipal and supervisory liability.

### III.  CONCLUSION

For the reasons stated, **IT IS ORDERED** that the defendants' motion for summary judgment (ECF No. 43) is **GRANTED IN PART** and **DENIED IN PART**.  All claims other than the plaintiff's claim for unreasonable search and seizure against Thoms are dismissed.  Defendants City of Milwaukee, Edward Flynn, Edith Hudson, Jason Mucha, and Michael Vagnini are dismissed as parties.

**IT IS FURTHER ORDERED** that the plaintiff's motion for leave to file a first amended complaint (ECF No. 42) is **GRANTED**.

**IT IS FURTHER ORDERED** that the plaintiff's motion for leave to cite supplemental authority (ECF No. 61) is **GRANTED**.

**IT IS FURTHER ORDERED** that the parties' motions to file certain materials under seal (ECF Nos. 62 & 69) are **GRANTED**.

**IT IS FURTHER ORDERED** that the defendants' motion for leave to file an amended reply brief (ECF No. 78) is **GRANTED**.

**FINALLY, IT IS ORDERED** that a telephonic status conference will be held on **May 15, 2015 at 11:00 a.m.** for the purpose of scheduling further proceedings.  Counsel should call 414/297-1285 to advise of their participation.

Dated at Milwaukee, Wisconsin, this 15th day of April, 2015.

                            s/ Lynn Adelman

                            LYNN ADELMAN
                            District Judge